Joseph W. Cotchett, Cal. Bar No. 36324
Thomas E. Loeser, Cal. Bar No. 202724
Gia Jung, Cal. Bar No. 340160
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcom Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
tloeser@cpmlegal.com
gjung@cpmlegal.com

*Attorneys for Plaintiffs*

Karin B. Swope (*pro hac vice* to be filed)
Andrew J. Fuller (*pro hac vice* to be filed)
Jacob M. Alhadeff (*pro hac vice* to be filed)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (206)-299-4184
kswope@cpmlegal.com
afuller@cpmlegal.com
jalhadeff@cpmlegal.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

LORAINNE JESKA and SARAH CHAVEZ,

Plaintiffs,

vs.

DISCORD, INC. and ZENDESK, INC.,

Defendants.

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Lorainne Jeska ("Jeska") and Sarah Chavez ("Chavez"), individually and on behalf of all others similarly situated, bring this action against Discord, Inc. ("Discord") and Zendesk, Inc. ("Zendesk," and collectively, "Defendants"), seeking monetary damages, restitution, and declaratory and injunctive relief for the proposed Class, as defined below. Plaintiffs make the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

**NATURE OF THE ACTION**

1.      The release, disclosure, and publication of sensitive, private data can be devastating. It is not only an intrusion of privacy and a loss of control, but also a harbinger of identity theft. For victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have a grave consequences for victims for years after the actual date of the breach. With the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, collect government benefits, or secure driver's licenses in the victims' names. Data breaches force victims to maintain constant vigilance over the misuse of their information.

2.      Discord is one of the most prolific communications platforms in the world with 200 million active monthly users in 2023 and 560 million registered accounts.[2] In 2024 Discord generated $575 million in revenue.[3] Discord's most recent official valuation in 2021 was $15 billion.[4]

3.      Zendesk is a similarly substantial Customer Relationship Management ("CRM") provider that generated $1.9 billion in revenue in 2024 and is valued at $9.62 billion.[5]

---

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, S.C. Lawyer (May 2014).

[2] David Curry, *Discord Revenue and Usage Statistics*, BUSINESS OF APPS (Mar. 24, 2025), https://www.businessofapps.com/data/discord-statistics.

[3] *Id.*

[4] *Id.*

[5] https://getlatka.com/blog/zendesk-revenue (last visited Oct. 9, 2025).

CONSOLIDATED CLASS
ACTION COMPLAINT

4.      On or about October 3, 2025, Discord provided public notice that it had experienced a data breach beginning on September 20, 2025 (the "Data Breach").[6]

5.      In this notice, Discord claimed that through a third-party customer support system, Zendesk, cybercriminals accessed users' real names, usernames, email, and other contact details, billing information including the last four digits of credit card numbers, IP addresses, and—importantly—government ID images including driver's license numbers and passport numbers.[7]

6.      Upon accessing this highly sensitive information, the cybercriminals demanded a ransom from Discord in exchange for not leaking the stolen data.[8] Discord is in the process of contacting impacted individuals.

7.      Despite knowing how valuable customer information is and the damage that would result from its release, Defendants failed to adequately protect Plaintiffs' and Class Members' Personally Identifiable Information ("PII"). This PII was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data.

8.      Hackers targeted and obtained Plaintiffs' and Class Members' PII because it empowers criminals to exploit and steal the identities of Plaintiffs and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiffs and Class Members, will remain for their respective lifetimes.

9.      As a result of the Data Breach, through which their PII was compromised, disclosed, and obtained by unauthorized third parties, Plaintiffs and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense.

---

[6] Ionut Ilascu, *Discord Discloses Data Breach After Hackers Steal Support Tickets*, BLEEPING COMPUTER (Oct. 4, 2025), https://www.bleepingcomputer.com/news/security/discord-discloses-data-breach-after-hackers-steal-support-tickets/.

[7] *Update on a Security Incident Involving Third-Party Customer Service*, DISCORD (Oct. 3, 2025) https://discord.com/press-releases/update-on-security-incident-involving-third-party-customer-service.

[8] Ilascu, *see supra* note 6.

CONSOLIDATED CLASS
ACTION COMPLAINT

Consequently, Plaintiffs and Class Members will incur ongoing out-of-pocket costs (e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft).

10. By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach.

## PARTIES

### A. Plaintiff Lorainne Jeska

11. Plaintiff Lorainne Jeska is a resident and citizen of Connecticut.

12. On October 4, 2025, Plaintiff Jeska received a letter from Discord informing her of the data breach, and that her PII, along with the PII of persons throughout the country, was subject to unauthorized access.

### B. Plaintiff Sarah Chavez

13. Plaintiff Sarah Chavez is a resident and citizen of California.

14. As of the date of this Complaint, Sarah Chavez has been using Discord for approximately 7 years and pays Discord for its services.

15. On October 3, 2025, Plaintiff Chavez received a letter from Discord informing her of the data breach, and that her PII, along with the PII of persons throughout the country, was subject to unauthorized access.

### C. Defendants

16. Discord, Inc. is a Delaware Corporation with its principal place of business at 444 De Haro Street, Suite 200, San Francisco, California 94107.

17. Zendesk, Inc. is a Delaware Corporation with its principal place of business at 181 Fremont St., 17th Floor, San Francsico, California 94105.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

18. This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in

CONSOLIDATED CLASS
ACTION COMPLAINT

controversy exceeds $5,000,000, exclusive of interest and costs. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

19.     The Court has personal jurisdiction over Defendants. The Court has general jurisdiction because both Discord and Zendesk maintain their principal places of business in California. The Court also has specific jurisdiction over Defendants because both Defendants have sufficient minimum contacts with California and have purposefully availed themselves of the privilege of doing business in California such that they could reasonably foresee litigation being brought in California.

20.     Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendants' principal places of business are located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District.

21.     Pursuant to Local Rules 3-2(c), 3-2(d), and 3-5(b), this civil action arose in San Francisco County because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in San Francisco County. Defendants both operate from San Francisco County, which is their principal place of business.

## **FACTUAL ALLEGATIONS**

### I.     **The Data Breach Occurred Because Defendants Failed to Protect Private Data.**

22.     Discord repeatedly made security-related promises to customers and the public, including, but not limited to, Plaintiffs and Class Members. Discord advises customers that it takes several "steps to help protect your information."[9] Discord promises that all information in their system "is encrypted both in transit and at rest."[10] Discord further details the exact text and image encryption technique it uses while also promising that they enforce strict access controls to ensure their customer's PII is secure. Discord promises to customers that their services are "end-to-end encrypted."

---

[9] Discord, *Privacy Policy* (Aug. 29, 2025) https://discord.com/privacy (last visited Oct. 8, 2025).
[10] *Id.*

23.     Security is a core component of Discord's pitch to clients. Discord consistently and repeatedly advertises the security of their networks and systems.

> End-to-end encryption for audio and video (E2EE A/V) on Discord makes your calls even more private and secure by default. This added layer of security for audio and video calls gives visual confirmation that no one else can listen in on your calls or watch your stream besides the intended participants/viewers.[11]

24.     Discord promises explicitly and impliedly that it will keep secure the confidential and sensitive information for which it is entrusted.

25.     Discord is explicitly aware of the importance of data security and is aware of its responsibilities. In its notification letter to victims, Discord wrote, "[w]e take our responsibility to protect your personal data seriously and understand the inconvenience and concern this may cause."

26.     Zendesk too is aware of the importance of data security and its responsibilities related to data security. Zendesk's privacy policy explicitly acknowledges as much:

> We maintain appropriate security procedures and technical and organizational measures to protect your personal data against accidental or unlawful destruction, loss, disclosure, alteration, or use.

> Your personal data will be generally retained as long as necessary to fulfill the purposes for which we collected the personal data. Once you and/or your company have terminated the contractual relationship with us or otherwise ended your relationship with us, we may retain your personal data in our systems and records to ensure adequate fulfillment of surviving provisions in terminated contracts or for other legitimate business purposes, such as to evidence our business practices and contractual obligations, to provide you with information about our products and services, or to comply with applicable legal, tax, or accounting requirements. When we have no ongoing legitimate business need nor lawful legal ground to process your personal data, we will delete, anonymize, or aggregate it or, if this is not possible (for example, because your personal data has been stored in backup archives), then we will securely store your personal data and isolate it from any further

---

[11]  Discord, *End-to-End Encryption for Audio and Video*, https://support.discord.com/hc/en-us/articles/25968222946071-End-to-End-Encryption-for-Audio-and-Video (last visited Oct. 8, 2025).

CONSOLIDATED CLASS
ACTION COMPLAINT

processing until deletion is possible.[12]

27.    Notwithstanding these extensive security promises and Defendants' awareness of the importance of data security, on September 20, 2025, Defendants' experienced a data breach that publicly exposed Plaintiffs and Class Member's PII.[13] This breach lasted for 58 hours while hackers stole 1.6 terabytes of information.[14] The hackers claim that they gathered information on 5.5 million unique users including payment information for 580,000 individuals.[15] In addition, while Discord alleges that 70,000 government issued IDs were included in the data breach, the hackers who conducted the breach initially reported obtaining approximately 2,100,000 government-issued IDs.[16]

28.    In addition to other failures, Discord and Zendesk failed to implement and ensure compliance, including by contractors and third-party service providers, with reasonable access control policies and technologies and multi-factor authentication.[17] The breach would not have occurred if Discord or Zendesk had abided by their security-related promises. Public reporting on the breach indicates that the hackers used vulnerabilities and data-security lapses in Zendesk's Zenbar software to obtain and abscond with Plaintiffs and Class Members' PII from Discord.[18] If either Discord or Zendesk had implemented reasonable access control policies and technologies and protected against compromised accounts, the breach would not have occurred.

---

[12] Zendesk, *Privacy Notice* (Mar. 10, 2025), https://www.zendesk.com/company/agreements-and-terms/privacy-notice.

[13] Ilascu, *supra* note 6.

[14] Discord Zendesk Breach All You Need To Know, SOCRADAR (Oct. 8, 2025), https://socradar.io/discord-zendesk-breach-what-we-know-so-far/.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Stefanie Schappert, *Discord breach of 70,000 customer IDs, expose cracks in 3rd party age verification services, experts say*, CYBER NEWS (Oct. 9, 2025), https://cybernews.com/news/discord-70000-gov-ids-exposed-zendesk-third-party-breach-scattered-spider/.

CONSOLIDATED CLASS
ACTION COMPLAINT

29.      On October 3, 2025, Discord began providing notification letters to victims of the data breach advising that their personal information was accessed and compromised. On October 3, Plaintiff Chavez received her notice letter. Plaintiff Jeska received her notice letter on October 4. Both letters were the same, except for the referenced ticket number. Plaintiff Jeska's letter stated:

> Hello,
>
> We're reaching out to you because of a recent security incident on September 20 involving your personal data. Specifically, an unauthorized party gained limited access to a third-party customer service system used by Discord. We have confirmed that some of your personal data associated with your contact with our Customer Support or Trust & Safety teams was exposed in this incident.
> This may include:
>
> - Your name, Discord username, email and other contact details if you provided them
> - Limited payment information, including payment type, last four digits of your credit card, and purchase history if associated with your account
> - IP addresses
> - Messages and attachments sent to our Customer Support or Trust & Safety agents
>
> The incident did not include:
>
> - Full credit card numbers or CCV codes
> - Your physical address
> - Your messages or activity on Discord beyond what you may have discussed with customer support or trust and safety agents
> - Your Discord password or authentication data
>
> The ticket numbers impacted for your account were: ▮▮▮▮▮ You can use these ticket numbers to search for the relevant exchanges in your email account.

CONSOLIDATED CLASS
ACTION COMPLAINT

30.    Discord's notice letters failed to advise Plaintiffs and Class Members regarding the malware used and all of the steps that Defendants are taking to secure their PII moving forward.

31.    Defendants were familiar with their obligations—created by contract, industry standards, common law, and representations to their customers—to protect customer and family information.

32.    Plaintiffs and Class Members had the reasonable expectation that Defendants would comply with their obligations related to their PII. Defendants owed Plaintiff and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their PII.

33.    Defendants failed to comply with their obligations, resulting in the Data Breach. Class Members now face years of constant surveillance of their financial and personal records.

34.    Defendants have provided no assurances that all personal data has been either recovered or destroyed or that the company has sufficiently improved its data security practices to the extent necessary to avoid a future similar intrusion into its systems.

**II.    The Data Breach Puts Class Members at Increased Risk of Fraud and Identity Theft.**

35.    An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

36.    Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiffs and Class Members' finances are now at risk due to the Data Breach.

37.    Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[19] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 75% of identity theft victims reported emotional distress.[20]  Victims of identity theft can

---

[19] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics.

[20] *Id.*

experience financial damage as thieves run up debts into the tens of thousands. These victims can have their credit history destroyed, impairing their ability to obtain a loan, a mortgage, or even to lease housing. Victims of identity theft can experience substantial legal complications due to breaches. These risks and vulnerabilities are ongoing.

38.    Plaintiffs and Class Members are now in the position of having to take steps to mitigate these damages caused by the Data Breach. Once the use of compromised non-financial PII is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[21]

39.    Defendants failed to protect and safeguard Plaintiffs and Class Members' private information, in fact failing to adhere to even their most basic obligations. As a result, Plaintiffs and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

## CLASS ALLEGATIONS

40.    This action is brought by Plaintiffs individually and on behalf of the following Class and State Subclasses:

**Nationwide Class.** All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.

**Connecticut Subclass.** All natural persons in Connecticut whose Personally Identifiable Information was compromised as a result of the Data Breach.

**California Subclass.** All natural persons in California whose Personally Identifiable Information was compromised as a result of the Data Breach.

---

[21] *Identity Theft: The Aftermath 2013*, IDENTITY THEFT RESOURCE CENTER, https://idtheftcenter.org/wp-content/uploads/2021/09/Aftermath2013.pdf. (last visited June 16, 2025).

CONSOLIDATED CLASS
ACTION COMPLAINT

41.    Excluded from the Class and Subclasses are Defendants; Defendants' employees, agents and assigns; any members of the judiciary to whom this case is assigned and their court staff or immediate family members; and Plaintiffs' counsel.

42.    The definitions of the Class and Subclasses may be further modified or amended by additional pleadings, evidentiary hearings, motions, a class certification hearing, and orders of this Court.

43.    The Class and Subclasses consist of at least thousands of customers whose data was wrongfully exfiltrated from Defendants' servers. The identities of members of the Class and Subclasses can be readily ascertained from business records maintained by Defendants.

44.    **Numerosity and Ascertainability:** Plaintiffs do not know the exact size of the Class or Subclasses or the identity of the Class Members because such information is in the exclusive control of Defendants. Nevertheless, based on published reports, the Class and Subclasses contain millions of persons and are, therefore, so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. The names, phone numbers, and addresses of Class Members are identifiable through documents maintained by Defendants.

45.    **Commonality and Predominance:** This action involves common questions of law and fact as to all members of the class, which predominate over any question solely affecting individual Class Members. Common questions of law and fact include, but are not limited to, the following:

   (a) Whether Defendants engaged in the conduct alleged herein;

   (b) Whether Defendants had a legal duty to use reasonable security measures to protect Plaintiff and Class Members' PII;

   (c) Whether Defendants' failure to implement effective security measures to protect Class Member PII was negligent;

   (d) Whether Defendants' decision to retain government-issued IDs after age verification was negligent;

   (e) Whether Plaintiff and Class Members are entitled to injunctive relief;

   (f) Whether Plaintiff and Class Members are entitled to declaratory relief; and

   (g) Whether as a result of Defendants' conduct, Plaintiff and the Class are entitled to damages and equitable relief.

CONSOLIDATED CLASS
ACTION COMPLAINT

46.    **Typicality:** Plaintiffs' claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendants' substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other members of the Classes that they seek to represent, and there are no defenses that are unique to Plaintiffs. Plaintiffs and Class Member claims and injuries arise from the same facts and are based on the same law.

47.    **Adequacy:** Plaintiffs are adequate Class Representatives because their interests do not conflict with the interests of other Class Members they seek to represent; Plaintiffs have retained competent counsel that is experienced in complex class action litigation; and Plaintiffs intend to vigorously prosecute this action. The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

48.    **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. No unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Class Members are relatively small compared to the expense required to individually litigate their claims against Defendants, so, absent class-wide adjudication, it would be virtually impossible for Class Members to seek individual redress against Defendants' wrongful conduct.

**COUNT ONE**
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Nationwide Class)**

49.    Plaintiffs incorporate paragraphs 1–48 as if fully set forth herein.

50.    As part of their business, Defendants solicited, collected, and maintained Plaintiffs and Class Members' PII.

51.    Defendants' business depended upon collecting Plaintiffs and Class Members' PII because the software it provides requires the use and maintenance of Plaintiffs and Class Members' PII.

52.    Defendants owed Plaintiffs and Class Members a common law duty to use reasonable care to avoid causing foreseeable risks of harm to Plaintiffs and Class Members when collecting, employing, maintaining, storing, and managing PII.

CONSOLIDATED CLASS
ACTION COMPLAINT

53.    Upon collecting, accepting custody of, and storing Plaintiffs and Class Members'
PII, Defendants undertook and owed a duty to Plaintiffs and Class Members to safeguard and
protect their PII using reliable, proven, effective, and safe methods for doing so.

54.    Defendants were fully aware that Plaintiffs and Class Members' PII was sensitive,
that Plaintiffs and Class Members would suffer extensive injuries if their PII was wrongfully
disclosed, and that providing sufficient security for the collected PII was of critical importance.

55.    Plaintiffs and Class Members were foreseeable victims of Defendants' insufficient
security protocols and practices. Defendants had a duty of care to not subject Plaintiffs and Class
Members to an unreasonable risk of injury. Defendants knew that cyber criminals frequently use
cyberattacks to steal sensitive PII and exploit it for financial gain to the substantial detriment of the
individuals to whom the PII pertains.

56.    Defendants' duty to Plaintiffs and Class Members extended to protecting them from
the foreseeable risk of third parties' criminal conduct.

57.    Defendants' duties to Plaintiffs and Class Members also included:

(a) Using reasonable and adequate technology and security procedures to promptly
    detect security incidents, data breaches, or unauthorized access into servers,
    email systems, and company networks;

(b) Safeguarding Plaintiffs and Class Members' PII by employing adequate and
    reasonable security practices and technology;

(c) Using reasonable care in creating, maintaining, and testing Defendants' email
    accounts, networks, policies and procedures, employee trainings, and security
    protocols, to ensure that Plaintiffs and Class Members' PII was safe and
    reasonably secure from theft, publication, or disclosure.

58.    Only Defendants were capable of securing their own systems and programs and
making sure that the security measures employed were sufficient to safeguard Plaintiffs and Class
Members' PII.

59.    Defendants breached their duty of care because they failed to adequately safeguard
Plaintiffs and Class Members' PII. Defendants' breaches included, but were not limited to:

(a) Failing to adequately train and test their employees on safely sending and storing
    PII;

(b) Failing to reasonably implement protocols for promptly detecting security incidents, data breaches, or unauthorized access to sensitive data, including Plaintiffs and Class Members' PII;

(c) Failing to use adequate and reasonable security systems and policies for safeguarding the PII they possessed;

(d) Failing to train their employees to avoid phishing emails and test employees' conduct upon receipt of suspicious emails;

(e) Failing to enforce security policies for protecting Plaintiffs and Class Members' PII;

(f) Failing to use reasonable and adequate industry standard security systems and devices for emails, including SPAM filters, DMARC compliance, and/or Sender Policy Framework compliance;

(g) Failing to ensure that Defendants did not maintain or keep PII on their systems, servers, and devices for longer than necessary; and

(h) Failing to use reasonable care in protecting, maintaining, using, and erasing the PII that Defendants possessed.

60.     Defendants' failure to fulfill these duties was reckless, grossly negligent, and wrongful considering the foreseeable and substantial risks that such a failure would entail.

61.     Plaintiffs and Class Members have already suffered injuries and are at imminent risk of additional injuries as a foreseeable and proximate result of Defendants' negligence.

62.     Plaintiffs and Class Members' PII has been publicly exposed as a direct result of Defendants' breach of its duty to use reasonable care to adequately protect and secure Plaintiffs and Class Members' PII.

63.     Plaintiffs and Class Members have suffered and will continue to suffer damages which are the direct and proximate result of Defendants' negligent conduct. These damages include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of their PII.

CONSOLIDATED CLASS
ACTION COMPLAINT

64.    Defendants' wrongful acts and omissions constituted and continue to constitute common law negligence.

65.    Plaintiffs and Class Members are accordingly entitled to damages in an amount to be proven at trial.

**COUNT TWO**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiffs and the Nationwide Class)**

66.    Plaintiffs incorporate paragraphs 1–48 as if fully set forth herein.

67.    The FTC Act prohibits "unfair practices in or affecting commerce."[22] It imposed and continues to impose on Defendants a duty to Plaintiffs and Class Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiffs and Class Members' PII. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumers' confidential data as an unfair act or practice prohibited by Section 5 of the FTC Act.[23]

68.    Defendants' failure to use reasonable and appropriate methods to guard Plaintiffs and Class Members' PII against unauthorized access is an unfair act or practice that Section 5 of the FTC Act prohibits.

69.    Defendants violated the FTC Act by failing to comply with industry-standard data security practices, as described above.

70.    The class of people that the FTC Act was intended to protect include Plaintiffs and Class Members.

71.    The injuries that Plaintiffs and Class Members suffered and continue to suffer and that resulted from the Data Breach are the types of injuries that the FTC Act was intended to prevent.

---

[22] 15 U.S.C. § 45(a).

[23] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited July 16, 2025); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited July 16, 2025).

CONSOLIDATED CLASS
ACTION COMPLAINT

72.     As a direct and proximate result of Defendants' negligence and violations of the FTC Act, Plaintiffs and Class Members have suffered and will continue to suffer injury, which include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of their PII.

73.     Plaintiffs and Class Members are accordingly entitled to damages in amounts to be proven at trial.

**COUNT THREE**
**GROSS NEGLIGENCE**
**(On Behalf of Plaintiffs and the Nationwide Class)**

74.     Plaintiffs incorporate paragraphs 1–48 as if fully set forth herein.

75.     Plaintiffs and Class Members entrusted Defendants with highly-sensitive and inherently personal private data subject to laws on confidentiality and unfair trade practices.

76.     In collecting, obtaining and storing Plaintiffs and Class Members' PII, Defendants owed a duty of reasonable care in safeguarding the PII.

77.     Defendants' networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiffs and Class Members' PII were secured from unauthorized access.

78.     Defendants' networks, systems, protocols, policies, procedures and practices were not reasonable given the sensitivity of the Plaintiffs and Class Members' private data.

79.     Defendants did not comply with state and federal laws and rules concerning the use of safekeeping of this private data.

80.     Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiffs and Class Members' PII were secured from unauthorized access,

CONSOLIDATED CLASS
ACTION COMPLAINT

Defendants ignored the inadequacies and were oblivious to the risk of unauthorized access they had created.

81.    Defendants' behavior establishes facts evidencing a reckless disregard for Plaintiffs and Class Members' rights.

82.    Defendants, therefore, were grossly negligent.

83.    Defendants' negligence is directly linked to Plaintiffs and Class Members' injuries. As a result of Defendants' reckless disregard for Plaintiffs and Class Members' rights by failing to secure their PII, despite knowing their networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiffs and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of their PII.

84.    The harm to Plaintiffs and the Class Members was a proximate, reasonably foreseeable result of Defendants' breaches of the applicable laws and regulations.

85.    Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

**COUNT FOUR**
**BREACH OF IMPLIED CONTRACTS**
**(On Behalf of Plaintiffs and the Nationwide Class)**

86.    Plaintiffs incorporate the allegations in paragraphs 1–48 by reference as if fully set forth herein.

87.    Plaintiffs and Class Members provided their PII to Defendants in order to obtain services.

88.    By providing their PII, and upon Defendants' acceptance of such information, Plaintiffs and Class Members on one hand, and Defendants on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Defendants were obligated to take reasonable steps to secure and safeguard that information.

89.    Defendants had an implied duty of good faith to ensure that the PII of Plaintiffs and Class Members in their possession was only used in accordance with their contractual obligations.

90.    Defendants were therefore required to act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiffs and Class Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Defendants assented to these terms in their Privacy Policies.

91.    Under these implied contracts for data security, Defendants were further obligated to provide Plaintiffs and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

92.    Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to Defendants, including paying for the services provided by Defendants and/or providing the PII required by Defendants.

93.    Defendants breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs and Class Members' PII, resulting in the Data Breach. Defendants unreasonably interfered with the contract benefits owed to Plaintiffs and Class Members.

94.    Further, on information and belief, Defendants have not yet provided Data Breach notifications to some affected Class Members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to Defendants. These Class Members are unaware of the potential source for the compromise of their PII.

95.    The Data Breach was a reasonably foreseeable consequence of Defendants' actions in breach of these contracts.

96.     As a result of Defendants' conduct, Plaintiffs and Class Members did not receive the full benefit of the bargain and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiffs and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

97.     Plaintiffs, Class Members, or any reasonable person would not have provided their PII to Defendants had Defendants disclosed that their security was inadequate or that they did not adhere to industry-standard security measures.

98.     As a result of Defendants' breach, Plaintiffs and the Class Members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

99.     As a result of Defendants' breach, Plaintiffs and Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiffs and the Class Members have suffered actual identity theft and the inability to control their PII.

100.    Accordingly, Plaintiffs and Class Members have been injured as a result of Defendants' breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

**COUNT FIVE**
**BREACH OF IMPLIED DUTY OF**
**GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiffs and the Nationwide Class)**

101.    Plaintiffs incorporate paragraphs 1– 48 as if fully set forth herein.

102.    Plaintiffs and Class Members were the intended beneficiaries of contracts with Defendants.

103.    These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included

1  the covenants that Defendants would act fairly, reasonably, and in good faith in carrying out their

2  contractual obligations to protect the confidentiality of Plaintiffs and Class Members' PII and to

3  comply with industry standards and federal and state laws and regulations for the security of this

4  information.

5       104.    Defendants entered into special relationships with Plaintiffs and Class Members,

6  who entrusted their confidential PII to Defendants and, directly or indirectly, paid for the services

7  that Defendants ultimately provided.

8       105.    Defendants promised and were obligated to protect the confidentiality of Plaintiffs

9  and Class Members' PII from disclosure to unauthorized third parties. Defendants breached the

10  covenant of good faith and fair dealing by failing to take adequate measures to protect the

11  confidentiality of Plaintiffs and Class Members' PII, which resulted in the Data Breach. Defendants

12  unreasonably interfered with the contract benefits owed to Plaintiffs and Class Members by failing

13  to implement reasonable and adequate security measures consistent with industry standards to

14  protect and limit access to the PII of Plaintiffs and the Class in Defendants' possession.

15       106.    Plaintiffs and Class Members performed all conditions, covenants, obligations, and

16  promises owed to Defendants, including paying for the services they received and entrusting

17  Defendants with the confidential PII.

18       107.    As a result of Defendants' breach of the implied covenant of good faith and fair

19  dealing, Plaintiffs and Class Members did not receive the full benefit of their bargain—services

20  with reasonable data privacy—and instead received services that were less valuable than what they

21  paid for and less valuable than their reasonable expectations under the contracts. Plaintiffs and

22  Class Members have suffered actual damages in an amount equal to the difference in the value

23  between services with reasonable data privacy that Plaintiffs and Class Members paid for, and the

24  services they received without reasonable data privacy.

25       108.    As a result of Defendants' breach of the implied covenant of good faith and fair

26  dealing, Plaintiffs and Class Members have suffered actual damages resulting from the theft of their

27  PII and remain at imminent risk of suffering additional damages in the future.

28

109.    As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

110.    As a direct and proximate cause of Defendants' conduct, Plaintiffs and Class Members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendants from their conduct. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

**COUNT SIX**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

111.    Plaintiffs incorporate paragraphs 1–48 as if fully set forth herein.

112.    Plaintiffs and Class Members conferred a monetary benefit on Defendants in the form of monetary payments—directly or indirectly—for services.

113.    Discord collected, maintained, and stored the PII of Plaintiffs and Class Members and, as such, Defendants had knowledge of the monetary benefits conferred by Plaintiffs and Class Members. The collection, maintenance, and storage of Plaintiffs and Class Members' PII was a central part of Defendants' business and ability to gain profits.

114.    The money that Defendants directly or indirectly received from Plaintiffs and Class Members should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendants failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

115.    As a result of Defendants' failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class Members paid for, and the services they received without reasonable data privacy.

CONSOLIDATED CLASS
ACTION COMPLAINT

116.    Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and Class Members because Defendants failed to implement the data management and security measures that are mandated by industry standards and that Plaintiffs and Class Members paid for.

117.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by Defendants. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendants traceable to Plaintiffs and the Class.

**COUNT SEVEN**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

118.    Plaintiffs incorporate paragraphs 1–48 as if fully set forth herein.

119.    Plaintiffs and the Class have stated claims against Defendants based on negligence, negligence per se, gross negligence, breach of implied contracts, breach of implied duty of good faith and fair dealing, and unjust enrichment.

120.    Defendants failed to fulfill their obligations to provide adequate and reasonable security measures for the PII of Plaintiffs and the Class, as evidenced by the Data Breach.

121.    As a result of the Data Breach, Defendants' systems are more vulnerable to unauthorized access and require more stringent measures to be taken to safeguard the PII of Plaintiffs and the Class going forward.

122.    Plaintiffs seek a declaration that Defendants must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendants' existing security measures do not comply with their obligations, and that Defendants must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

CONSOLIDATED CLASS
ACTION COMPLAINT

**COUNT EIGHT**
**CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")**
**CAL. CIV. CODE SECTION 1798.150, et seq.**
**(On Behalf of Plaintiff Chavez and the California Subclass)**

123.    Plaintiff Chavez incorporates paragraphs 1–48 as if fully set forth herein.

124.    Plaintiff Chavez brings this claim on behalf of herself and members of the California Subclass.

125.    Defendants are corporations organized or operated for the profit or financial benefit of their owners.

126.    Defendants collected consumers' personal information as defined in Cal. Civ. Code § 1798.140.

127.    By failing to protect Plaintiff Chavez and California Subclass Members' PII from theft, exfiltration, or unauthorized disclosure, Defendants breached their duties to ensure adequate data security practices and violated § 1798.150 of the CCPA.

128.    Defendants have a duty to implement and maintain reasonable security measures to protect Plaintiff Chavez and California Subclass Members' PII. Defendants failed to do so.

129.    Defendants' actions directly and proximately caused Plaintiff Chavez and California Subclass Members' Private Information, including actual names, usernames, emails, other contact information, credit card or other payment information, and copies of government IDs to be exfiltrated, stolen, disclosed, or subjected to unauthorized access.

130.    Plaintiff Chavez and California Subclass Members seek equitable relief to ensure Defendants sufficiently secure customers' Private Information by implementing sufficient data security procedures and practices. Defendants continue to hold customers' PII. Plaintiff Chavez and California Subclass Members have an interest in ensuring that their PII is reasonably protected, and Defendants have demonstrated their inability to sufficiently safeguard their information through the Data Breach.

131.    An actual controversy now exists as to whether Defendants have implemented and maintained adequate security procedures and practices under the CCPA, in relation to the nature of the information.

CONSOLIDATED CLASS
ACTION COMPLAINT

132.    Judicial intervention on this issue is necessary and appropriate under the circumstances to prevent further data breaches of Plaintiff Chavez and California Subclass Members' PII.

133.    Plaintiff and California Subclass members seek statutory damages or actual damages, including actual financial losses that are a result of the unlawful data breach.

**COUNT NINE**
**CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**BUSINESS & PROFESSIONS CODE SECTION 17200, et seq.**
**(On Behalf of Plaintiff Chavez and the California Subclass)**

134.    Plaintiff Chavez incorporates paragraphs 1–48 as if fully set forth herein.

135.    Plaintiff Chavez brings this claim on behalf of herself and members of the California Subclass.

136.    Defendants are each a "person" under the UCL, Cal. Bus. & Prof. Code § 17201.

137.    Defendants violated the UCL through their unfair and unlawful business practices.

138.    Under California's UCL, Cal. Bus. & Prof. Code Section 17200, et seq., a business practice is "unfair" when "any injury it causes outweighs any benefits provide[d] to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

139.    Defendants' failures to implement and maintain adequate security measures do not benefit consumers. Defendants implemented insufficient, ineffective, and cheap security measures. Defendants diverted the funds necessary to ensure sufficient data security to their own profits, which lead to the Data Breach. Defendants did not follow necessary protocols, policies, and procedures necessary for security and encryption in line with industry standards and requirements. Defendants concealed and omitted the material fact that they inadequately secured Plaintiff Chavez and Subclass Members' PII. Defendants concealed and omitted the material fact that they did not fulfill their statutory obligations and common law duties for security of Subclass Members' PII.

140.    Defendants were deceptive, misleading, and unreasonable, constituting an unfair business practice as interpreted by Cal. Bus. & Prof. Code Section 17200. Defendants' actions, as

described herein, has resulted in harm to consumers who paid for Defendants' products and services inconsistent with reasonable expectations of data security.

141.    California's UCL finds a business practice is "unlawful" when Defendants breach state or federal law and the "unfair competition law makes [these breaches] independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Defendants engaged in "unlawful" business practices by violating the FTC Act, 15 U.S.C. § 45, the CCPA, Cal. Civ. Code § 1798.100, and California Common law.

142.    Defendants' conduct, as alleged herein, is deceptive, misleading, unreasonable, and constitutes unlawful conduct. Defendants' conduct, including misrepresentations and omissions, was material because a regular consumer would be deceived about Defendants' data security standards. Defendants disregarded Plaintiff Chavez and Subclass Members' rights. Defendants maliciously, intentionally, and knowingly violated California's Unfair Competition Law.

143.    Defendants' unfair and unlawful conduct directly and proximately caused Plaintiff Chavez and Subclass Members' injuries, including lost money or property. But for Defendants' unfair and unlawful acts, Plaintiff Chavez and Subclass Members' harm would not have occurred, including an increased imminent risk of identity theft, a diminished value for their personal information, and necessary time and expenses for monitoring fraudulent activity. Due to Defendants' unlawful conduct, as alleged herein, customers who entrusted their Private Information to Defendants have suffered injuries-in-fact as a result of the Data Breach.

144.    Defendants' failure to enforce proper security measures violates public policy, which is designed to protect consumers' data and to ensure that organizations entrusted with such data adopt necessary security protocols. These objectives are reflected in laws such as the FTC Act, 15 U.S.C. § 45, and the CCPA, Cal. Civ. Code § 1798.100. Consumers cannot reasonably avoid the injuries that Defendants caused as alleged herein. Victims' injuries outweigh potential benefits to the Defendants. Defendants could have furthered their business interests in a manner other than this unfair conduct.

145.    Plaintiff Chavez and California Subclass members seek an order enjoining Defendants from continuing their unlawful, deceptive, and unfair business practices. Plaintiff

Chavez and California Subclass members seek an order requiring Defendants to implement and maintain sufficient data security practices in accordance with their statutory and common law duties. Plaintiff Chavez and California Subclass members request an award for restitution for the money wrongfully acquired by Defendants' unfair and unlawful practices.

**COUNT TEN**
**CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**CAL. CIV. CODE 1750, et seq.**
**(On Behalf of Plaintiff Chavez and the California Subclass)**

146.    Plaintiff Chavez incorporates paragraphs 1–48 as if fully set forth herein.

147.    Plaintiff Chavez brings this claim on behalf of herself and members of the California Subclass.

148.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods. Cal. Civ. Code § 1770.

149.    Defendants' unlawful conduct described herein was intended to increase sales to the consuming public and violated Section 1770(a)(5), (a)(7), and (a)(9) of the CLRA by representing that the products and services have characteristics and benefits, such as appropriate data security, that they do not have.

150.    Defendants fraudulently deceived Plaintiff Chavez and the California Subclass by representing that their products and services have certain characteristics, benefits, and qualities which they do not have, namely data protection and security. In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff Chavez and the California Subclass, specifically by advertising secure services when Defendants in fact failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff Chavez and the California Subclass and depriving them of their legal rights and money.

151.    Defendants' claims about the products and services led and continue to lead consumers like Plaintiff Chavez and Subclass Members to reasonably believe that Defendants have implemented adequate data security measures when Defendants in fact neglected system vulnerabilities that led to a data breach and enabled hackers to access customers' PII.

CONSOLIDATED CLASS
ACTION COMPLAINT

152.    Defendants knew or should have known that adequate security measures were not in place and that consumers' PII was vulnerable to a data breach.

153.    Plaintiff Chavez and the California Subclass have suffered injury in fact as a result of and in reliance upon Defendants' false representations.

154.    Plaintiff Chavez and the California Subclass would not have purchased the products or used the services or would have paid significantly less for the products and services, had they known that their Personal Information was vulnerable to a data breach.

155.    Defendants' actions as described herein were done with conscious disregard of Plaintiff Chavez and the rights of California Subclass members, and Defendants were wanton and malicious in their concealment of the same.

156.    Plaintiff Chavez and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff Chavez paid for products and services advertised as secure, and consequentially entrusted Defendants with her PII, when Defendants in fact failed to institute adequate security measures and neglected vulnerabilities that led to a data breach. Plaintiff Chavez and the California Subclass would not have purchased the products and services, or would not have provided Defendants with their PII, had they known that their Personal Information was vulnerable to a data breach.

157.    Defendants should be compelled to implement adequate security practices to protect customers' PII. Additionally, Plaintiff Chavez and the members of the California Subclass lost money as a result of Defendants' unlawful practices.

158.    Plaintiff Chavez and California Subclass Members seek all monetary and nonmonetary relief allowed by law including restitution; reasonable attorneys' fees and costs under California Code of Civil Procedures § 1021.5; and injunctive relief under the CLRA pursuant to Cal. Civ. Code 1782(d) and other appropriate equitable relief.

**COUNT ELEVEN**
**Violation of the Connecticut Unfair Trade Practices Act ("CUPTA")**
**Conn. Gen. Stat. § 42-110a, *et seq*.**
**(On Behalf of Plaintiff Jeska and the Connecticut Subclass)**

159. Plaintiff Jeska incorporates paragraphs 1–48 as if fully set forth herein.

160. Plaintiff Jeska brings this claim on behalf of herself and members of the Connecticut Subclass.

161. Plaintiff Jeska, Connecticut Subclass members, and Defendants are each a "person" as defined by Conn. Gen. Stat. Ann. § 42-110a.

162. Defendants advertised, offered, or sold goods or services in Connecticut and engaged in commerce directly or indirectly affecting the people of Connecticut.

163. Defendants, engaged in "unfair or deceptive acts or practices" prohibited by Conn. Gen. Stat. Ann. § 42-110b(a) by:

    a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Jeska and Connecticut Subclass Members' PII, which was a direct and proximate cause of the Data Breach;

    b.    Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Jeska and Connecticut Subclass Members' PII, including duties imposed by the Conn. Gen, Stat. § 42-515, *et seq.* and the FTC Act, 15 U.S.C. § 45, which were a direct and proximate cause of the Data Breach;

    d.    Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Jeska and Connecticut Subclass Members' PII, including by implementing and maintaining reasonable security measures;

    e.    Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Jeska and Connecticut Subclass Members' PII, including duties imposed by Conn. Gen. Stat. § 42-515, *et seq.* and the FTC Act, 15 U.S.C. § 45;

    f.    Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff Jeska and Connecticut Subclass Members' PII; and

    g.    Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Jeska and Connecticut Subclass Members' PII,

including duties imposed by Conn. Gen. Stat. § 42-515, *et seq.* and the FTC Act, 15 U.S.C. § 45.

164.    Defendants' representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of Defendants' data security and ability to protect the confidentiality of individual's PII.

165.    Had Defendants disclosed to Plaintiff Jeska and Connecticut Subclass Members that their data systems were not secure and thus vulnerable to attack, Defendants would have been forced to adopt reasonable data security measures and comply with the law. Defendants were trusted with sensitive and valuable PII regarding millions of consumers and individuals, including Plaintiff Jeska and the Connecticut Subclass. Defendants accepted the responsibility of protecting the data, while keeping the inadequate state of their security controls secret from the public. Accordingly, Plaintiff Jeska and the Connecticut Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

166.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff Jeska and Connecticut Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; (iv) illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of PII; lost value of access to PII permitted by Defendants; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendants' Data Breach; lost benefits

CONSOLIDATED CLASS
ACTION COMPLAINT

Karin B. Swope (*pro hac vice* to be filed)
Andrew J. Fuller (*pro hac vice* to be filed)

1   of bargains as well as overcharges for services or products; nominal and general damages; and other

2   economic and non-economic harm.

3      167.   Plaintiff Jeska and Connecticut Subclass Members seek all monetary and non-

4   monetary relief allowed by law, including actual damages under and reasonable attorneys' fees

5   under Conn. Gen, Stat. § 42-110g and any other relief that is just and proper.

6                        **PRAYER FOR RELIEF**

7      WHEREFORE, Plaintiffs seek that this matter be certified as a class action, and that their

8   attorneys be appointed Class Counsel and that they be appointed Class Representatives, and

9   Plaintiffs demand judgment against Defendants as follows:

10  (a)   Certify this case as a class action, appoint Plaintiffs as Class Representatives, and
          appoint Plaintiffs' Counsel as Class Counsel for Plaintiffs to represent the Class;

11  (b)   Find that Defendants breached their duties to safeguard and protect the PII of
12        Plaintiffs and Class Members that were compromised in the Data Breach;

13  (c)   Award Plaintiffs and Class Members appropriate relief, including actual and
          statutory damages, restitution and disgorgement;

14  (d)   Award equitable, injunctive and declaratory relief as may be appropriate;

15  (e)   Award all costs, including experts' fees and attorneys' fees, and the costs of
          prosecuting this action;

16
17  (f)   Award pre-judgment and post-judgment interest as prescribed by law; and

    (g)   Grant additional legal or equitable relief as this Court may find just and proper.

18                        **JURY DEMAND**

19  Plaintiffs demand a trial by jury for all issues so triable.

20

21        By:    */s/ Thomas E. Loeser*
                 Joseph W. Cotchett, Cal. Bar No. 36324
22               Thomas E. Loeser, Cal. Bar No. 202724
                 Gia Jung, Cal. Bar No. 340160
23               **COTCHETT, PITRE & MCCARTHY, LLP**
                 840 Malcom Road
24               Burlingame, CA 94010
                 Telephone: (650) 697-6000
25               Facsimile: (650) 697-0577
                 jcotchett@cpmlegal.com
26               tloeser@cpmlegal.com
                 gjung@cpmlegal.com
27

28

CONSOLIDATED CLASS
ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Karin B. Swope (*pro hac vice* to be filed)
Andrew J. Fuller (*pro hac vice* to be filed)
Jacob M. Alhadeff (*pro hac vice* to be filed*)*
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (206)-299-4184
kswope@cpmlegal.com
afuller@cpmlegal.com
jalhadeff@cpmlegal.com

CONSOLIDATED CLASS
ACTION COMPLAINT